## J. W. AND E. L. JOHNSON v. NATIONAL UNION FIRE INS. CO. et al.

Western Section.    October 12, 1928.

Petition for Certiorari denied by Supreme Court, December 19, 1927.

1. **Evidence. Incredible testimony which cannot be true must be rejected.**
    It is a sound rule of law that incredible testimony which according to physical facts cannot be true, must be rejected.

2. **Insurance. Evidence. Evidence held not sufficient to be rejected as being incredible.**
    In an action to recover on an insurance policy where the defense was that books had not been kept as required by the policy and complainant offered evidence that books had been kept but were destroyed in the fire and further testified that the books were about an inch thick and were in the safe, and produced certain other papers in the safe, a part of which had been completely destroyed, held that the physical facts did not make this testimony so incredible that it must be rejected.

3. **Insurance. Evidence. Evidence in instant case held sufficient to entitle complainant to recover on policy.**
    Evidence held sufficient to show that building and stock of groceries were not destroyed by complainant burning the same, and held sufficient to justify a recovery from the insurance company.

4. **Insurance. Insurance company not liable for statutory penalty where complainant had been indicted for arson.**
    In an action to recover the statutory penalty for refusal to pay an insurance policy, where the evidence showed that at the time the suit was filed the complainant was under indictment for arson for burning the building, held that although the charge was groundless, unless the company was responsible for the obtaining of false evidence on which complainant was indicted, it would not be liable for the statutory penalty for refusal to pay.

Appeal from Chancery Court, Haywood County; Hon. V. H. Holmes, Chancellor.

Reversed.

Kinney & Wills, of Brownsville, for appellant.

H. C. Anderson and D. T. Henderson, of Jackson, for appellee.

HEISKELL, J. This suit was brought by J. W. Johnson and wife to recover on two insurance policies of the defendant Insurance Company, one policy for $1250 on a store building, and for $750 on the stock of goods, groceries, etc., in same, and the other for $500 more on said stock of goods, groceries, etc., aggregating $1250 on the stock of goods and the same amount on the storehouse.

At the time the first policy was issued J. W. Johnson and his wife, E. L. Johnson, each owned an undivided one-half interest in the store building and an undivided one-half interest each in the said stock of goods, groceries, etc. Subsequently, but before the issuance of the last policy on the stock of goods, J. W. Johnson sold to his wife his undivided interest in said stock of goods and also transferred to her his interest in the policy on the stock of goods, but retained his half interest in the store building and in the insurance on same.

Complainants allege that before the issuance of the last policy, which was on the stock of goods only, the agent of the Insurance Company was informed by both J. W. Johnson and his wife, E. L. Johnson, that the wife had bought her husband's interest in the stock of goods, but not his interest in the building, and that they requested him to issue the policy to her, but the agent wrote up the policy as he did the first one, that is, in the names of both J. W. Johnson and his wife, E. L. Johnson, and told them that he had so prepared it, but that it was good.

The agent was a general agent in possession of policies with the names of the president and secretary of the company printed on the policies, with nothing to be done but fill in the blanks with the amount of insurance, describe the property, date, countersign and deliver.

The bill charges that timely notice of the fire was given and proofs of the loss furnished the insurance company, and that no additional proof of loss was requested, and that the company also made its own investigation of the fire and loss, and that it had waived any other or additional proof of loss. That the stock of goods at the time of the fire was worth $3000 and the building $1976, or about twice the amount of insurance on same. That demand for the payment of the insurance had been made, and that after sixty days from the date provided for in the policies had expired, that demand was again made, and it is claimed that the insurance company, having failed to pay, was liable for the statutory penalty of twenty-five per cent on the amount of insurance due.

The demurrer of the defendants having been overruled, they answered, denying that the stock of goods was worth $3000 and the house $1900, and denying that the building and stock of goods were accidentally burned or' that complainants undertook to comply with all the provisions of the contract and with the "iron safe clause."

The defendants in their answer further averred that complainants breached the policy in that they did not keep a set of books, showing a complete record of the business transacted by them, including all purchases and sales, both for cash and credit, and in that they did not keep such a record securely locked in a fire proof safe at nights and at all times when the store was not actually open for business, or in some secure place not exposed to a fire which would destroy the building where such business was carried on.

Defendants aver a breach of the contract on the part of the complainants in that they wilfully concealed the true origin of the fire and in falsely representing under oath the value of said stock of merchandise.

The answer also charged complainant J. W. Johnson with having entered into an agreement and conspiracy to defraud the defendant by removing a greater portion of the stock of merchandise, and then setting fire to the building about one hour before the expiration of the $2000 policy.

Answering such parts of the bill as seeks recovery of twenty-five per cent penalty, defendants aver that their refusal to pay for the property covered by the policies was in good faith and that in addition to the facts set out in the answer, it was advised that the State fire marshal of Tennessee was making an investigation into the origin of the fire and that as a result of the investigation the facts thus disclosed would be presented to the grand jury of Haywood county; that said facts were presented to the grand jury, which said grand jury returned an indictment against the complainant J. W. Johnson and his son J. R. Johnson, charging them with having set fire to and burned said store building, which said indictment was pending in the circuit court of Haywood county at the time of the filing of the answer.

Defendant by supplemental answer, set up as defense the provisions of the policy as to change of ownership, and misrepresentation of ownership, and false swearing in regard thereto, the complainant J. W. Johnson having sold his interest in said stock of goods to his wife, E. L. Johnson, subsequent to the issuance of the first policy, and had no interest whatever in the property covered by the second policy, and J. W. Johnson having made affidavit in the alleged proof of loss that J. W. and E. L. Johnson were the owners of the personal property insured in the policies sued on.

Upon the hearing the Chancellor dismissed complainants' bill and taxed them with costs. From this decree complainants have appealed and assigned errors.

The Chancellor filed a written finding of facts in which he reached these conclusions: That the defendant had failed to show by a preponderance of proof that the fire was of incendiary origin. That the complainants by a preponderance of proof showed that the agent of the insurance company, before the second policy was issued, was notified by J. W. Johnson that he had sold his interest to his wife and this notice was binding on the defendant company. That the proof shows by a fair preponderance that the value of the property destroyed was in excess of the amount of the insurance.

Thus far the findings of fact were in favor of complainants, but the Chancellor found that complainants had failed to comply with the iron safe clause in the policies and therefore could not recover on either policy, or for either building or stock of goods. The Chancellor found that there was an iron safe in the store, which, while it proved not to be fire proof, was a compliance with this part of the requirement, but that complainants had failed to keep in the safe or elsewhere a set of books, as required, and therefore could not recover.

The first assignment of error challenges the correctness of this ruling that complainants had not complied with the iron safe clause.

J. R. Johnson, the son of complainants, J. W. and E. L. Johnson had kept the store for his mother for some months before the fire, at least as far back as January, 1925, the fire being on October 31, 1925. He testified that he kept two books showing purchases and sales and that these books were in the iron safe at the time of the fire and were destroyed. There can be no question that if the books were kept, as the witness testifies, and were in the safe that this would be a compliance with said clause of the policies, but the Chancellor found as a fact that no such books had been kept. He considered it physically impossible that the testimony of J. R. Johnson could be true and therefore on this testimony itself found that the witness had sworn falsely.

The safe was a small one with a single door about eight inches thick, and no inner door. After the fire the door was sprung, leaving a crack wide enough to insert a ten penny nail. J. R. Johnson says the books were in the compartment intended for them next inside the door. One was an inch thick, the other half an inch. Back of the books was a roll of invoices four inches in diameter, tied up with cord. The books had pasteboard backs. That he opened the safe the morning after the fire and found the books destroyed by the fire, so that they had fallen to pieces in the form of ashes or charred paper. That he found the roll of papers back of the books charred and destroyed on the outside, but in the center of the roll, a portion of the papers remained only partly destroyed and partly legible.

This remnant of the roll he procured and attached as an exhibit to his testimony. The sound part of this roll, untied and sprung loose, is perhaps an inch and a half in diameter; as tied by twine before the fire it probably occupied less space. A portion of this exhibit has crumbled into paper charcoal, entirely illegible and shattered into small fragments, but a portion remains unburned.

The Chancellor was strongly impressed with the idea that books an inch and a half thick could not have been destroyed and a roll of paper invoices four inches in diameter have escaped entire destruction. His reasoning is that the testimony of the witness is incredible, because physically impossible, therefore not to be believed. Therefore the witness has sworn falsely and there were no such books.

The rule is a sound one, that incredible testimony which cannot be true must be rejected, but does that rule apply here. Might it not be that the books bound in paper, the thickest one inch and in front of the four-inch roll, should be destroyed while a third or fourth of the roll escaped total destruction. The books being in front, between the door and the roll, might have shielded the roll, and then the destroyed part of the roll more than an inch thick might have protected the inner part. Is this so incredible as to convict of perjury a witness otherwise unimpeached?

Besides we think this consideration is entitled to some weight in this connection. If the witness had been concocting false testimony, why did he produce the exhibit? Why not say the roll of invoices was entirely destroyed, or that the safe contained nothing but the books?

The defendant company knew about this fire at once, and through the fire marshal and some agent got busy to convict complainant of arson; tried to intimidate J. R. Johnson to confess removal of goods and searched somewhat ruthlessly every likely place for removed goods. The defendant might have presented some testimony as to the condition of that safe. There were small wooden drawers inside the safe. The condition of these might have served to contradict J. R. Johnson, if the wood was not badly damaged. On the contrary, if the wood was severely burned it would tend to corroborate him. If the front of drawers are badly burned and the back part not so much so, it would relieve the incredibility of the testimony. Since the witness testified that the books were in the safe and were destroyed, and the defendant is relying on the incredibility of his testimony to destroy it, is it not fair to presume that the defendant would have introduced the proof of the condition of the inside of the safe, if it would not have been against defendant's contention.

The Chancellor refers to two things in the case which he thinks supports his finding that there were no books in the safe. An inventory was taken of the stock of goods on September 10, 1925, and this was not in the safe, but at the residence of complainants. The Chan-

cellor considered it a very suspicious circumstance that this inventory, showing over $3000—evidence in favor of complainants—should have been kept safe, while that which might have been against them was not preserved. However, this explanation is given. E. L. Johnson did not stay at the store. She was trying to sell to Ben Hightower and she told her son to make the inventory and bring it to her to use in dealing with Hightower. That Hightower said when the stock got up to $3000 it was more than he could buy. The·complainants and J. R. Johnson agree as to this reason for the inventory being at the residence. Hightower is not asked about it, but he appeared as a witness and defendant could have asked him. Besides books, such as it is claimed were in the safe, would be used continually at the store, and would be useless elsewhere, while the inventory would not be so required.

The Chancellor also attached weight to the circumstance that nothing was said about any money in the safe or elsewhere. We cannot see that this should be taken against the complainants to the extent of showing that J. R. Johnson swore falsely as to the books, inasmuch as no question was asked any witness as to money on hand at time of fire.

Upon the whole testimony we are of the opinion that this assignment should be sustained.

Defendant, however, insists that the lower court should have held in its favor on the other defenses set up in the answer. As to these we thoroughly agree with the findings of the Chancellor and do not consider it necessary to discuss the proof in detail.

By a strong preponderance ·of the evidence the record shows that J. W. Johnson notified the agent of defendant that he had sold to his wife his interest in the stock of goods. The agent drew up the policy, as he had authority to do, and the company is bound. There is no evidence sufficient to warrant the court in finding that complainants burned the property, but the strong preponderance of proof is to the contrary. While defendant introduced some proof as to depletion of the stock, there is more and better testimony to the effect that the stock at the time of the fire was as large as it had been at the time of the inventory in September. It is claimed that trade was bad and this is urged as a motive for burning. There is nothing in this except that the weather had been unusually rainy and therefore people had not been coming to the store much and therefore the stock had not been reduced as much as was customary. It is also insisted that J. W. Johnson ran off to Memphis on Saturday in order to be absent when the predestined fire occurred. But Johnson had an opportunity to go in an automobile, he had a sister and daughter in Memphis to see on business and he says he wanted to buy some goods on Monday. There is no proof of arson in this. The finding is well warranted by the proof that the property destroyed by the

fire was worth much more than the amount of the insurance. No motive is shown for burning the store. J. W. Johnson is shown to be a man of good character, while the only direct witness as to an intention on the part of J. W. Johnson to burn the store is shown to be utterly unworthy of belief.

The most thorough search of the premises of complainants and of their relatives failed to disclose any goods removed from the fire. Defendant has utterly failed to make out the charge that complainants burned the property.

The proof also shows notice of loss given to the defendant, no further proof demanded, but an absolute refusal to pay or to recognize any liability. The defendant can make nothing out of this defense.

The seventh assignment of error is that the Chancellor should not only have granted a decree in favor of the complainants for the amount of the policies, but for twenty-five per cent penalty. Testimony was presented to the grand jury, perhaps through the influence of the fire marshal, which resulted in the indictment for arson of J. W. and J. R. Johnson. While this testimony was largely false, and there was no chance of a conviction, still the defendant under such circumstances cannot be held liable for the penalty unless it be shown that the defendant knew that the testimony upon which the indictment was obtained was false and that there was no ground for the charge of arson. This assignment is overruled.

It is not necessary to notice the other assignments nor the other arguments of counsel on the other side, as such consideration could not effect the conclusion reached. It results that the decree of the Chancellor is reversed and a decree will go in favor of complainants for the amount of the policies with interest and costs, but without penalty.

Owen and Senter, JJ., concur.